**UNITED STATES DISTRICT COURT**
**IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:14-cv-21884-BB**

DEBRA HARRIS and BARBARA STARK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

NORDYNE, LLC,

Defendant.
_______________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Plaintiffs, Debra Harris and Barbara Stark, on behalf of themselves and all others similarly situated ("**Plaintiffs**"), by and through the undersigned counsel, submit this response in opposition to the Motion to Dismiss Class Action Complaint filed by Defendant, Nordyne, LLC ("**Defendant**"). (Doc. 10). For the reasons set forth below, Defendant's Motion should be denied.

## INTRODUCTION

Plaintiffs filed this class action on behalf of themselves and all other similarly situated Florida consumers who purchased residential heating, ventilation and air conditioning ("**HVAC**") systems manufactured, distributed and sold by Defendant, Nordyne, LLC. As alleged in the Complaint, these HVAC units uniformly included defective copper evaporator coils that caused the HVAC units to prematurely fail, thereby damaging consumers in the form of unanticipated refrigerant leaks and associated labor costs. Despite knowing the defective evaporator coils would be unknown to and not easily discoverable by consumers, Defendant failed to adequately disclose the

defect to consumers or to otherwise cure the defect. Plaintiffs and putative Class Members would not have purchased HVAC systems manufactured by Defendant, or would have paid less for their HVAC systems, had they known about the defect. Based upon these allegations, Plaintiffs have properly pled claims against Defendant for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and Unjust Enrichment.

## STATEMENT OF FACTS

Plaintiffs in this action are purchasers of Nordyne HVAC units sold under the brand names Broan and Frigidaire, who suffered and sustained financial loss as a result of Defendant's deceptive and unfair conduct. Defendant Nordyne manufactures, distributes and sells HVAC systems under the brand names of Broan, Frigidaire, Maytag, NuTone, Tappan, Westinghouse, Intertherm, Miller, Broan Manufactured Housing, Gibson, Kelvinator, Philco and Mammoth. (Compl. ¶7). Nordyne represents itself to the public as a "trusted name in the industry" that has been "designing and manufacturing reliable heating and cooling products for more than 90 years." (Compl. ¶11). Nordyne further represents that it "focuses on creating genuine value for its customers through a unique combination of innovation, product performance and responsive support." (Compl. ¶11). Notwithstanding these representations, Nordyne systemically and uniformly manufactured, distributed and sold defective HVAC systems into the stream of commerce, to the detriment of consumers, including Plaintiffs and Class Members.

HVAC systems, like those manufactured by Nordyne, include an air handler component which contains an evaporator coil that cools air within the home. When air passes through the coil, refrigerant contained within the coil absorbs heat from the air and sends it back into the home in the form of cool air. Refrigerant is not consumed in the process and is only lost if there is a leak in the evaporator coil. Nordyne manufactured its HVAC systems to include evaporator coils with copper tubing, which is susceptible to formicary corrosion. Formicary corrosion ultimately causes copper coils to fail and refrigerant to leak from the corrosion-induced holes or cracks in the coils, which

prevents the HVAC system from generating cool air. Formicary corrosion also requires consumers to repeatedly and prematurely refill their HVAC units with refrigerant, which is a significant expense.

Nordyne knew that the copper coils within its HVAC units were vulnerable to formicary corrosion, and that alternative designs, which were not likewise susceptible to formicary corrosion, were available for use in its HVAC units. (Compl. ¶19). Despite knowledge that use of these alternative designs would have prevented the premature coil failure, Nordyne continued using the problematic copper evaporator coils in its air handlers through at least 2012. (Compl. ¶19). Nordyne also continued to manufacture, distribute and sell HVAC systems with defective evaporator coils to consumers in Florida, during which time Nordyne failed to disclose this defect to its consumers, along with the availability of replacement coils that are not susceptible to formicary corrosion.

Both Plaintiffs in this action purchased Nordyne HVAC units with defective evaporator coils. Likewise, both Plaintiffs' units prematurely failed as a result of these defective evaporator coils, causing Plaintiffs to incur damages – specifically, the replacement of the refrigerant and associated labor costs. As alleged in the Complaint, had Plaintiffs and Class Members known of the defect and costs associated with the premature failure of their HVAC units, they would not have purchased the HVAC units or would have paid less for them. (Compl. ¶¶4, 29, 38, 46, 66).

Defendant attempts to escape liability for its deceptive and unfair conduct by arguing that Plaintiffs have not identified any unfair or deceptive act or practice, have not established causation, and have not pled their FDUTPA claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. In doing so, Defendant misinterprets well-established law and attempts to inject a series of unfounded assertions that are entirely contrary to the clear intent of FDUTPA. As discussed below, there is substantial legal authority supporting Plaintiffs' FDUTPA claims, which more than adequately plead an unfair or deceptive act or practice and the requisite causation.

Further, while the law in this District requires Plaintiffs to meet the liberal pleading requirements of Rule 8, Plaintiffs have more than adequately pled their FDUTPA claim to provide Defendant with the requisite notice under both Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure.

Defendant also contends that Plaintiffs' unjust enrichment claim cannot proceed because an adequate remedy at law exists under FDUTPA, and because of the existence of an express warranty, which conveniently does not cover the claims at issue. However, as described herein, it is well established that Plaintiffs may assert alternative claims, and Plaintiffs have clearly alleged that there is not an adequate remedy at law. In addition, the express warranty that Defendant references did not constitute an express contract capable of eliminating Plaintiffs' unjust enrichment claim.

Finally, Defendant suggests that Plaintiffs' Complaint should be dismissed on the basis that Plaintiffs have not adequately pled diversity jurisdiction under 28 U.S.C. §1332(d) because Defendant is a limited liability corporation ("**LLC**"), which allegedly required Plaintiffs to plead the citizenship of each member of Defendant's LLC. However, Defendant cites no binding legal authority to support this contention. Moreover, this argument is a red herring, as the managing member of Nordyne is principally located in Rhode Island, which Defendant failed to acknowledge in its Motion or disclose in its Initial Disclosures pursuant to Rule 26.

## LEGAL STANDARD

When ruling on a motion to dismiss, the Court must accept all facts alleged as true, and the complaint must be construed in the light most favorable to the plaintiff. *Rosenthal Collins Group, LLC v. Moneytec, LLC,* Case No. 08-60992-CIV, 2010 WL 556382, at *1 (S.D. Fla. Feb. 11, 2010). Even after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint need only state facts sufficient to raise the right to relief above a speculative level. *Gelfound v. Metlife Ins. Co. of Connecticut*, Case No. 13-80479-CIV, 2014 WL 584214, at *1 (S.D. Fla. Feb. 14, 2014). "The threshold is exceedingly low for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be

granted." *AXA Equitable Life Insurance Co. v. Infinity Financial Group LLC, et al.*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009). This jurisdiction has made it clear that "a motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gasper v. Louisiana Stadium*, 577 F.2d 897, 900 (5th Cir. 1978) (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)). When evaluating a motion to dismiss, courts are "bound by the four corners of the complaint." *Fye v. Broadspire Servs., Inc.*, Case No. 07-CV-60903, 2007 WL 4557152, at *2 (S.D. Fla. Dec. 20, 2007).

## I. ARGUMENTS

### A. The Complaint Adequately States a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act

The allegations set forth in Plaintiffs' Complaint are more than sufficient to show that Nordyne violated FDUTPA. A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006); *Martorella v. Deutsche Bank Nat. Trust Co.*, 2013 WL 1137514, at *3 (S.D. Fla. 2013); *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009); *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1300 (S.D. Fla. 2011). Plaintiffs have sufficiently pled all three elements.

#### 1. The FDUTPA Claim Is Not Subject to the Heightened Pleading Requirements of Rule 9(b).

Defendant argues without merit that Plaintiffs have not pled their FDUTPA claim with the particularity required by Rule 9(b). However, courts in this District have specifically recognized that the requirements of Rule 9(b) do not apply to FDUTPA claims and thus "the heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims." *Guerrero v. Target Corp.*, 889 F.Supp.2d 1346, 1354 (S.D. Fla. 2012); *Costa v. Kerzner Int'l Resorts, Inc.*, Case No. 11-60663-CV-COHN, 2011 WL 2519244, at * 2 (S.D. Fla. Jun. 23, 2011); *Gastaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045 (S.D. Fla.

2009). Thus, a claim under FDUTPA need only meet the notice-pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *Id.* Plaintiffs have adequately pled a claim for FDUTPA pursuant to the liberal pleading requirements of Rule 8, and dismissal of Plaintiffs' FDUTPA claim is not warranted.

However, whether Rule 8 or Rule 9(b) applies to Plaintiffs' claims is of no consequence, as Plaintiffs have more than adequately pled their FDUTPA claim to meet the heightened particularity requirements of Rule 9(b). The detailed Complaint alleges the exact nature of the defect, including that the defective evaporator coils have caused Nordyne's HVAC systems to prematurely fail due to the leakage of refrigerant stored within the coils. (Compl. ¶2). It further alleges that Nordyne knew of the defective evaporator coils in its HVAC units prior to selling them to Plaintiffs, but that it nevertheless continued to sell the HVAC units to consumers while failing to disclose the defect to unsuspecting consumers, thereby taking away their bargaining power to negotiate the diminished value of the product. (Compl. ¶¶19, 20, 22, 23, 63, 64). Plaintiffs further allege that, as a result of Nordyne's failure to disclose the subject defect to consumers or to otherwise correct it, Nordyne engaged in unconscionable, deceptive and unfair business practices, causing damages to Plaintiffs and Class Members, who reasonably expected that Nordyne's HVAC systems would not be defective and would function as intended. (Compl. ¶26).

With respect to both Class Representatives, the Complaint includes allegations of when Ms. Harris and Ms. Stark purchased the subject HVAC units (Compl. ¶¶31, 40); the amounts that they Plaintiff paid for their respective HVAC units (Compl. ¶¶32, 41); the dates of the installations of their HVAC units (Compl. ¶¶33, 41); the time period during which their units prematurely failed as a result of the defective evaporator coils (Compl. ¶¶34, 35, 36, 37, 38, 42,

43); the steps that both Plaintiffs took to identify – and attempt to remedy – the nature of the undisclosed defect (Compl. ¶¶35, 44); the out-of-pocket costs that both Plaintiffs incurred to repair the undisclosed defect (Compl. ¶¶37, 45); and that both Plaintiffs would not have purchased the HVAC units, or would have paid less for them, had they known about the defective evaporator coils (Compl. ¶¶38, 46). In sum, these detailed allegations are more than sufficient to meet the heightened pleading requirements of Rule 9(b).

**2. Plaintiffs Have Adequately Alleged That Defendant Engaged in a Deceptive and Unfair Course of Conduct.**

Defendant maintains that Plaintiffs' FDUTPA claim fails because they do not allege that Defendant engaged in an unfair or deceptive act or practice. In doing so, Defendant ignores both the detailed allegations in the Complaint and the clear intent of FDUTPA, which is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" and is expressly intended to be liberally construed. Fla. Stat. § 501.202(2). *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000).

While "FDUTPA itself does not define the elements of a cause of action for unfair trade practices[,] …the standards of unfairness and deception for purposes of the FDUTPA are set forth and interpreted by the Federal Trade Commission or the federal courts." *Gold Coast*, 2006 WL 4579688, at *2 (citing Fla. Stat. §501.204(1) and §501.203(3)(b)). As interpreted by the federal courts, "an unfair practice is 'one that offends established public policy,' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Martorella*, 2013 WL 1137514, at *4 (citation omitted). Further, the Florida Supreme Court has noted that "deception occurs if there is a representation, *omission*, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v.*

*Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (internal citations omitted). Accordingly, FDUTPA explicitly allows for "omissions" to serve as a basis for allegations of deceptive and unfair conduct.

Despite Defendant's flagrant misinterpretation that FDUTPA only encompasses egregious conduct, it is well established that FDUTPA should be liberally construed and the scope of the conduct that may constitute a violation of the statute is extremely broad.[1] *Citibank (South Dakota) N.A. v. Nat'l Arbitration Council, Inc.*, No. 3:04-cv-1076-J-32MCR, 2006 WL 2691528, at *3 (M.D. Fla. Sept. 19, 2006) (finding that "[s]ince FDUTPA does not clearly define what constitutes "unfair and deceptive," courts have held that "the statute should be construed liberally," and that the concept should be regarded as "extremely broad."") (citation omitted); *Davis*, 776 So. 2d at 973 (indicating that FDUTPA must be liberally construed in order to promote the policy of "protect[ing] the consuming public"); *Dorestin v. Hollywood Imports, Inc.*, 45 So.3d 819, 826, 832 (Fla. 4th DCA 2010) (same).

When interpreting the liberal requirements of FDUTPA, courts have upheld and certified class action claims regarding a manufacturer knowing of and failing to disclose product defects. *See Davis*, 776 So.2d at 973 (granting class certification to FDUTPA claim where "[t]he

---

[1] Defendant cites *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1321 (S.D. Fla. 2010), *Scott v. Capital One Bank & Capital One Servs.*, Case No. 8:08-cv-132-T-30EAJ, 2008 WL 2157037, at *2-3 (M.D. Fla. May 20, 2008) and *H & J Paving of Fla., Inc. v. Nextel, Inc.*, 849 So.2d 1099, 1100 (Fla. 3d DCA 2003) for the proposition that FDUTPA only encompasses egregious conduct, likening it to the Sherman Act, predatory lending practices or the sale of "useless and obsolete" equipment. This is a complete mischaracterization of the liberal intent of FDUTPA and incredibly misleading. Indeed, in *Scott*, the court denied defendant's motion to dismiss the FDUTPA claim and, in doing so, did nothing to suggest that its ruling was limited to predatory lending practices, as Defendant suggests. Instead, the court confirmed FDUTPA's applicability to actions based upon omissions when it allowed the plaintiff to proceed with a FDUTPA claim predicated upon the defendant's "fail[ure] to provide adequate information regarding Payment Protection coverage and restrictions prior to selling the product to consumers." *Scott*, 2008 WL 2157037, at *2-3.

common feature of the class claims, according to the plaintiffs, was that Powertel's *alleged nondisclosure* had reduced the value of the phone in each case.") (emphasis added). Thus, a FDUTPA claim may rely upon a defendant's alleged omissions, as opposed to alleging or identifying specific misrepresentations. Here, Nordyne's knowledge of the defective copper coils, coupled with its failure to repair or disclose the defect to unsuspecting consumers, is a deceptive and unfair practice.

In *Matthews v. American Honda Motor Co., Inc.*, Case No. 12-60630-CIV, 2012 WL 2520675, at *2-3 (S.D. Fla. 2012), the plaintiff brought a FDUTPA claim based upon allegations that the defendant manufactured and sold vehicles with a latent defect that did not manifest itself within the applicable warranty period, and that the defendant knew of the defect, but failed to disclose it to consumers. In that case, the defendant sought to dismiss the plaintiff's claims on the basis that the plaintiff did not allege either an affirmative misrepresentation or a defect involving safety issues. The Court rejected those arguments and, in doing so, reiterated well-established law that an "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and "deception occurs if there is a representation, *omission*, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). Relying upon this firm legal tenet, the Court also acknowledged that the law "require[es] liberal construction of FDUTPA in order to promote the policy of 'protect[ing] the consuming public,'" and found that the plaintiff sufficiently alleged an unfair or deceptive trade practice with allegations that the defendant "knowingly fail[ed] to disclose a material defect that diminishes a product's value." *Id.* (citing *Fla. Stat.* §501.202(2)).

Similarly, in *Doll v. Ford Motor Co.*, 814 F.Supp.2d 526, 548-549 (D. MD. 2011), the court found that the plaintiff adequately alleged a claim under the liberal pleading requirements of FDUTPA, among other consumer protection statutes in various states, where the plaintiff alleged that the defendant knew of a defect in the product at issue, concealed its knowledge of the defect from plaintiff and class members, and where the plaintiff alleged that he would have paid significantly less for the vehicle or would not have purchased the vehicle if he knew of the defect. *See Barnext v. Offshore, LTD., v. Ferretti Group USA, Inc.*, Case No. 10-23869-CIV, 2012 WL 1570057, at *7 (S.D. Fla. May 2, 2012) (court allowed the plaintiff to proceed with a FDUTPA claim where allegations of the defendant's "unfair or deceptive acts at issue relate[d] to Defendants' involvement in placing an air conditioner with components, known to ignite fires, into the stream of commerce."); *Gavron v. WeatherShield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1300 (S.D. Fla. 2011) (court found that plaintiff adequately pled a FDUTPA claim with respect to the sale of defective windows where plaintiff did not rely on any of defendant's alleged misrepresentations and plaintiff alleged that defendant knew consumers were unaware of defects and that the defects "would defeat the consumers' ordinary, foreseeable, and reasonable expectations concerning the performance of [the] doors and windows").

Here, Plaintiffs have more than sufficiently pled facts supporting Defendant's unfair or deceptive acts or practices. This matter is properly founded upon Defendant's failure to disclose to consumers that its HVAC systems had defective evaporator coils, which compromised the performance of the HVAC systems and caused consumers to incur unanticipated out-of-pocket expenses for refrigerant and associated labor costs, along with increased utility bills, thereby diminishing the value of the HVAC units. Defendant attempts to gloss over these facts by arguing that this case is based upon simple puffery, and that Plaintiffs have merely cited

formulaic recitations of the elements of FDUTPA. These assertions are completely inaccurate. This case is about Defendant's deceptive representations and omissions that misled consumers acting reasonably under the circumstances, and led to actual damages, as detailed by the following allegations in the Complaint:

1. Nordyne manufactured, distributed and sold HVAC systems that it knew contained materially defective copper evaporator coils that would fail prematurely under normal use. (Compl. ¶ 64);

2. Despite this knowledge, Nordyne failed to disclose or otherwise notify Plaintiffs and putative Class Members of these adverse material facts, including the inherent likelihood of premature failure of the HVAC systems, the likelihood of formicary corrosion, leaking of refrigerant, and unanticipated out-of-pocket expenses in connection with repairs associated with the defective coils. (Compl. ¶¶ 20, 64);

3. These defects interfered with Plaintiffs and putative Class Members' reasonable expectations concerning the performance of the HVAC systems manufactured by Defendant, and caused injury to Plaintiffs and putative Class Members. (Compl. ¶ 64);

4. Nordyne knew the defect within the copper evaporator coils was unknown to and would not be discovered by Plaintiffs and putative Class Members and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of its HVAC systems. (Compl. ¶¶ 21, 64);

5. Rather than remedy the defect or inform consumers of the defect, Nordyne continued to manufacture and distribute HVAC systems to Florida consumers without disclosing the defect to these consumers. (Compl. ¶ 22);

6. Nordyne knew that the design defects in its evaporator coils would cause them to develop formicary corrosion, making them unreasonably susceptible to premature rupture and refrigerant leaks when used under normal conditions. (Compl. ¶ 64);

7. By failing to disclose that its HVAC systems contained defective evaporator coils that caused premature failure of the units, Nordyne engaged in unconscionable, deceptive and unfair business practices, causing damages to Plaintiffs and Class Members, who reasonably expected that Nordyne's HVAC systems would not be defective and would function as intended. (Compl. ¶ 26); and

8. Plaintiffs and putative Class Members would not have purchased the HVAC systems manufactured by Nordyne, or would have paid less for the HVAC systems, had they known about the defective evaporator coils. (Compl. ¶¶ 4, 38, 46).

These allegations are more than adequate to state a FDUTPA claim in a case alleging unfair or deceptive conduct regarding Defendant's sale of a defective product to unsuspecting consumers. *See Collins v. DaimlerChrysler Corp.*, 894 So.2d 988, 989 (Fla. 5th DCA 2004) (court found plaintiff adequately stated a claim under FDUTPA where plaintiff alleged seatbelts were defective, defendant knew or should have known of defect but took no action to remedy the problem, and plaintiff based decision to purchase a Chrysler in part on reputation for safety); *James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecomms., Inc.*, Case No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at *3 (M.D. Fla. 2008) (court found that in order to adequately plead a FDUTPA claim, a plaintiff need not allege that the defendant advertised or sold anything of value to the plaintiff, and to require otherwise "would stand contrary to the express holdings of other courts.").

Nordyne further mischaracterizes Plaintiffs' factual allegations and asks the Court to rely upon unfounded assumptions in Defendant's favor. For example, Nordyne argues that Plaintiffs have

alleged adequate disclosure of the defect, but no such allegation exists.[2] Plaintiffs clearly allege that they were unaware of the defect in their HVAC units, and that if they had knowledge of the defect, they would not have purchased the HVAC units or would have paid less for them.

Further, Defendant's application of a limited warranty that intentionally excludes a known defect is a violation of the FDUTPA. *Doll v. Ford Motor Co.*, 814 F.Supp.2d 526, 548-49 (D. MD. 2011) (finding plaintiff adequately alleged a claim under the Maine Unfair Trade Practices Act, which, like FDUTPA, declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce," where plaintiff alleged that defendant intentionally limited its warranty to exclude a known defect, concealed the existence of the defect, sold a defective product that required prohibitively high repair costs, and alleged that he would not have bought the product had defendant adequately disclosed the defect). Given the above, Plaintiffs have adequately alleged Defendant's violations of FDUTPA.

**3. Plaintiffs Have Alleged Causation and Recoverable Damages.**

Defendant argues, without merit, that actual reliance or the objective possibility of reliance by a reasonable consumer is required for a FDUTPA claim. In doing so, Defendant seeks to inject a reliance requirement into the causation element of FDUTPA that does not exist. The Act simply does not require reliance in any form. *Davis*, 776 So. 2d at 973, *review denied*, 794 So. 2d 605 (Fla. 2001) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). Rather, the FDUTPA focuses on whether an act is unfair or deceptive, and whether the representation or omissions at issue would

[2] Defendant points to Plaintiffs' allegation in paragraph 19 of the Complaint, wherein Plaintiffs allege that Nordyne conceded on its website that the copper coils in its HVAC units were susceptible to certain household items. However, nowhere in the Complaint do Plaintiffs allege that they viewed, or were even aware of this disclosure. In addition, this disclosure was made after both Plaintiffs purchased their HVAC units. Nonetheless, the adequacy of this disclosure is not appropriately determined at the motion to dismiss stage, and is more suitable for the summary judgment stage.

deceive an objectively reasonably person, not whether an individual plaintiff relied upon a certain representation or omission.

Indeed, because "[t]he FDUTPA 'is designed to protect not only the rights of litigants, but also the rights of the consuming public at large[,]'" to impute a requirement for individual reliance would interfere with the broad remedial purposes of the statute. *Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.*, No. 05-61931-CIV, 2006 WL 4579688, at *2 (S.D. Fla. Feb. 6, 2006) ("*Gold Coast*") (quoting *Davis*, 776 So.2d at 975) (class action for damages under FDUTPA does not require allegation that individual members of class relied on act or omission that is alleged to be unlawful). So "[w]hen addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances…" *Gold Coast*, 2006 WL 4579688, at *2 (citing *Davis*, 776 So.2d at 973-74). *See Gavron v. Weather Shield Mfg., Inc.*, 819 F.Supp.2d 1297, 1301 (S.D. Fla. 2011); *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011); *State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). Further, a deceptive practice can damage a consumer even if the consumer does not rely on the deceptive practice when purchasing a particular product. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 n. 2 (S.D. Fla. 2010). Hence, a plaintiff need not allege reliance on a deceptive or unfair representation or omission in order to state a claim under FDUTPA, or to establish the causation element of the FDUTPA.

Defendant also misconstrues the FDUTPA in arguing that Plaintiffs must have read or heard specific representations that lead to an injury. As discussed above, FDUTPA expressly allows for claims based upon deceptive representations or *omissions* that are likely to mislead consumers. *PNR, Inc.*, 842 So.2d at 777. Accordingly, FDUTPA does not require that Plaintiffs or Class Members actually saw or relied upon Defendant's deceptive representations, particularly where, as here, the deceptive and unfair conduct at issue relates to a product that is integral to Defendant's business, which Defendant is distributing into the stream of commerce to unwitting consumers. *See James D. Hinson Elec. Contracting Co., Inc.*, 2008 WL 360803, at *3 (finding that plaintiff adequately stated a FDUTPA claim, despite the fact that defendant did advertise, solicit or provide something of value to plaintiff, where the defendant was "generally involved in the offering of telecommunications services to the general public" and the conduct complained of was an integral part of defendant's business); *Gold Coast*, 2006 WL 4579688, at *2.

Defendant's baseless arguments conveniently ignore Plaintiffs' allegations that, as a result of Defendant's unfair and deceptive trade practices, Plaintiffs did not know at the time of their installation that the HVAC units were defective. As alleged in the Complaint, when Plaintiffs purchased their HVAC units, they reasonably believed they would function as intended and that they were not defective. Plaintiffs further allege that Defendant concealed the defect, and that, if Plaintiffs had known of the defect, they would not have purchased the products or would have paid less for them. Given these allegations, damages under FDUTPA are properly measured by the difference between the value of the HVAC units with non-defective parts and the value of the HVAC units, as delivered with defective evaporator coils. *In re Porsche Cars North America, Inc.*, 880 F.Supp.2d 801 (S.D. Fla. 2012) (allowing plaintiff to proceed with a FDUTPA claim based upon the diminished value of his vehicle, which was measured as the

difference between the value of the vehicle with non-defective parts and the value of the vehicle as delivered with defective coolant tubes). In other words, Plaintiffs and Class Members have been damaged by the diminution in value of the HVAC units purchased, which is the proper measure of damages under the FDUTPA. *Matthews*, 2012 WL 2520675, at *2-3 (citing *Davis*, 776 So. 2d at 973) ("…Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value.").

In *Matthews*, the plaintiff brought a FDUTPA claim based upon allegations that the defendant manufactured and sold vehicles with a latent defect involving coolant tubes that did not manifest itself within the applicable warranty period, and that the defendant knew of the defect, but failed to disclose it to consumers. *Matthews*, 2012 WL 2520675, at *2-3. The court found that these allegations were sufficient to plead a FDUTPA claim. The court further found that a consumer can recover under the FDUTPA when a defendant's deceptive conduct allegedly diminishes the value of the product sold. *Id.* Notably, in *Matthews*, the plaintiff did not rely on any of the defendant's express representations. Instead, it relied upon plaintiff's allegations that, had he known of the alleged coolant tube defect, he would not have purchased the vehicle at issue or would have insisted on paying less for it. *Id. See also* Fla. Stat. § 501.202(2); *Collins*, 894 So.2d at 990 (finding plaintiff adequately pled a FDUTPA claim based on allegations of defendant selling an automobile with defective seatbelt buckles, and defendant's failure to remedy same before selling the vehicle, and that "Florida courts have allowed diminished value to serve as "actual damages" recoverable in a FDUTPA claim since at least *Rollins* in 1984.") (*citing Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984)).

Similarly, in *Doll*, 814 F.Supp.2d at 548-49, the court found that the plaintiff pled sufficient facts to show that he was harmed as a result of the defendant's omissions about a

torque converter defect and the resulting transmission failure in the vehicle that the plaintiff purchased. As a result of the defendant's omissions, coupled with the plaintiff's allegations that he would have paid less for the vehicle or would not have purchased the vehicle at all, had he known of the defect, the court found that the plaintiff adequately alleged causation. *See also Martorella*, 2013 WL 1137514, at *5 (finding causation established under the FDUTPA where plaintiff alleged that defendants' unfair practices caused her damage when defendants erroneously placed insurance coverage on a property at grossly excessive and exorbitant insurance premiums); *Rollins, Inc.*, 454 So.2d at 585 (finding that the costs associated with repairing or replacing a defective alarm system amounted to actual damages under the FDUTPA).

Based upon the abundance of case law cited above, Plaintiffs' allegations are more than sufficient to demonstrate both causation and damages under the FDUTPA.

**B. The Complaint Adequately States a Claim for Unjust Enrichment**

Defendant claims that Plaintiffs cannot maintain an unjust enrichment claim because they have brought a FDUTPA claim and because of the existence of an express warranty, which conveniently does not cover the claims at issue. Yet again, Defendant ignores the ample legal authority confirming that Rule 8(d) allows pleading in the alternative, regardless of whether a plaintiff may not ultimately recover under both theories. *Kunzelmann v. Wells Fargo Bank, N.A.*, Case No. 9:11-cv-81373-DMM, 2012 WL 2003337, at *6 (S.D. Fla. June 4, 2012).

In the case of *In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F.Supp.2d 1311, 1337 (S.D. Fla. 2013), the court denied a motion to dismiss and allowed the plaintiffs to proceed with FDUTPA and unjust enrichment claims where plaintiffs alleged that they did not have an adequate remedy at law. In doing so, the court cited

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. Appx. 714, 722 (11th Cir. 2011), wherein the Eleventh Circuit recently stated the following:

> It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla.Dist.Ct.App.1998). However, that rule does not apply to unjust enrichment claims.

Faced with this recent ruling, Defendant alternatively argues that the express warranty merits dismissal of Plaintiffs' FDUTPA claim. However, the existence of an express warranty, alone, does not justify dismissal of Plaintiffs' unjust enrichment claim. *Id; Martorella*, 931 F.Supp.2d at 1228 (finding that "it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails.").

Here, Plaintiffs allege that Defendant knowingly failed to disclose the latent defect with its evaporator coils – a defect that is not covered by the express warranty and which clearly removes the applicability of warranty law to this matter. *Matthews*, 2012 WL 2520675, at *3, (court rejected defendant's argument that the vehicle's warranty barred the claim, stating, "[plaintiff's] allegation that [defendant] knowingly failed to disclose the latent paint defect takes this case outside of warranty law.") *See also, Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305 (S.D. Fla. 2008) (allowing plaintiff to proceed with unjust enrichment and FDUTPA claims, despite defendant's argument that the existence of a contract precluded both claims, and finding it premature to dismiss either claim at the motion to dismiss stage).

Further, Defendant's assertion that the existence of an express warranty precludes an unjust enrichment claim in this matter is untenable. The express warranty referenced by Defendant precludes certain claims for reimbursement relating to the latent defect at issue, including refrigerant and associated labor costs. Defendant is attempting to use this express warranty as a smoke screen to avoid liability. As alleged in the Complaint, the crux of this case

is that Plaintiffs would not have purchased their HVAC units, or would have paid less for them, had they known of the undisclosed defects and associated costs, which it was all-but-guaranteed that Plaintiffs would incur. Given that Defendant's warranty does not address the defect and omissions at issue, the warranty has no bearing on Plaintiff's unjust enrichment claim.

**C. Plaintiffs Have Adequately Pled CAFA Jurisdiction**

Defendant contends that Plaintiffs have not properly pled diversity jurisdiction under 28 U.S.C. §1332(d) because it is an LLC, which allegedly requires Plaintiffs to plead the identity and citizenship of all members. For purposes of CAFA jurisdiction, "an unincorporated association [such as an LLC] is considered to be a citizen of the state in which it has its principal place of business and the state under whose laws it is organized." *Lewis v. Seneff*, Case No. 6:07-cv-1245-Orl-22DAB, 2008 WL 3200273, at *5 (M.D. Fla. Aug. 5, 2008) (citing 28 U.S.C. §1332(d)(10))*; see also, Ferell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010) (finding that an LLC is an unincorporated association under 28 U.S.C. §1332(d)(10), and that the location of the principal place of the LLC's business, and not its members, is determinative of its citizenship for purposes of diversity jurisdiction under CAFA). Moreover, CAFA does not require complete diversity, but rather, allows for federal jurisdiction if "any member of the putative class is diverse from any defendant." *See* 28 U.S.C. §1332(d)(2).

Here, Plaintiffs have specifically alleged that Defendant is organized under the laws of Delaware and that it maintains its principal place of business in Missouri, from which it manufactures, distributes, and sells the HVAC units at issue. (Compl. ¶7). Therefore, Plaintiffs have adequately pled CAFA jurisdiction. Significantly, Defendant's Motion fails to identify the citizenship of any of its members or any other facts that would undermine jurisdiction under CAFA. Defendant's Certificate of Interested Parties also fails to identify its members or their citizenship. (Doc. 21). Doing so would have revealed that Defendant's managing member is

Nortek, Inc., which is located in Providence, Rhode Island. *See* Defendant's Application by Foreign Limited Liability Company for Authorization to Transact Business in Florida, attached as Exhibit A. The managing member's location outside of Florida further establishes that diversity jurisdiction exists here.

## CONCLUSION

For all of the above-discussed reasons, Defendant's Motion to Dismiss Class Action Complaint should be denied in its entirety, and Plaintiffs' class action should be permitted to proceed.

Dated: August 25, 2014

Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

*/s/ Jonathan B. Cohen*

Jonathan B. Cohen (Bar No. 0027620)
Rachel Soffin (Bar No. 0018054)
J. Andrew Meyer (Bar No. 0056766)
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jcohen@forthepeople.com
rsoffin@forthepeople.com
ameyer@forthepeople.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Jonathan B. Cohen*
Jonathan B. Cohen